UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
JAMES M. FAHEY, JR.,                          Chapter 7
                    DEBTOR.                    Case No. 11-10505-WCH

_____

CHARLES RASO,
                    PLAINTIFF,
                                              Adversary Proceeding
v.                                            No. 11-1118

JAMES M. FAHEY,
                    DEFENDANT.

_____

**MEMORANDUM OF DECISION**

**I. <u>INTRODUCTION</u>**

The matter before the Court is the "Plaintiff's Motion for Summary Judgment" (the "Motion for Summary Judgment") filed by the plaintiff, Charles Raso (the "Plaintiff") and the "Response of Defendant to Plaintiff's Motion for Summary Judgment" (the "Opposition") filed by the defendant, James M. Fahey (the "Debtor"). Through the Motion for Summary Judgment, the Plaintiff seeks to establish that delinquent union dues and contributions owed to an employee benefit plan are nondischargeable pursuant to 11 U.S.C. § 523(a)(4). For the reasons set forth below, I will deny in part the Motion for Summary Judgment and, pursuant to Fed. R. Civ. P. 56(f), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056, grant summary judgment in part to the Debtor.[1]

_____

[1] This memorandum replaces the prior memorandum of decision entered on this date and subsequently withdrawn.

1

## II. **BACKGROUND**

The material facts of this case are undisputed.  The Massachusetts Bricklayers and Masons Health and Welfare Fund, Pension Fund, and Annuity Fund (collectively, the "Funds") are three multi-employer employee benefit plans, as defined in 29 U.S.C. §§ 1002(3) and (37). The Health and Welfare Fund and the Pension Fund were established in 1959, and the Annuity Fund was established in 1973, each pursuant to separate, but essentially identical, trust agreements (the "Trust Agreements").[2]  The Plaintiff is trustee and treasurer for the Funds.[3]  The Plaintiff is also the president and secretary-treasurer of the Bricklayers and Allied Craftsmen Local Union No. 3 of Massachusetts, Maine and New Hampshire (the "Union").[4]

Zani Tile Co., Inc. ("Zani") was a business located in Watertown, Massachusetts, of which the Debtor was the president, treasurer and sole shareholder until the business ceased operating in August 2010.[5]  As Zani's "sole decision maker," the Debtor was in charge of day-to-day operations and was responsible for the company's bookkeeping, including payment of Zani's bills.[6]  In 1977, Zani entered into a collective bargaining agreement (the "CBA") with the Union, under which Zani agreed to be bound by the terms of the Trust Agreements.[7]  Specifically, Zani agreed to deduct from employees' paychecks amounts representing Union dues (the "Deductions") and forward the withheld amounts to the Funds.[8]  Zani also agreed to pay

---

[2] Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment ("Undisputed Facts"), Docket No. 16 at ¶ 4;  Affidavit of Charles Raso ("Raso Affidavit"), Docket No. 18 at Exhibits 1-3.

[3] *Id.* at  ¶ 3.

[4] *Id*. at ¶ 1.

[5] *Id.* at ¶¶ 16, 25.

[6] Undisputed Facts, Docket No. 16 at ¶ 16.

[7] Undisputed Facts, Docket No. 16 at ¶¶ 1, 7; Raso Affidavit, Docket No. 18, Exhibit 4 at Article VI, § 1.

[8] Raso Affidavit, Docket No. 18, Exhibit 4 at Article VI, § 1(e).

contributions (the "Contributions") to the Funds for each hour worked by employees covered by the CBA.[9]  The Trust Agreements provided that "all [C]ontributions shall be considered and defined as plan assets including [C]ontributions that are properly due and owing but not yet paid to the Fund by Contributing Employers."[10]  The Contributions were distinct from the Deductions in that they were not amounts withheld from employee paychecks, but rather amounts paid on Zani's behalf from its operating funds.  The Debtor was responsible for overseeing payment of the Deductions and Contributions to the Funds, and each month Zani submitted remittance reports to the Funds indicating the amount of Contributions due for each employee.[11]

Zani was timely in its payment of Deductions and Contributions until November 2008, at which time payments became consistently late.[12]  In March 2009, Zani ceased making payments altogether.[13]  During that time, however, Zani was paying at least some of its other obligations – Zani made payments through August 2010 to Citizens Bank on account of a loan that had been personally guaranteed by the Debtor and secured by a mortgage on real property owned by the Debtor.[14]  Further, between January 7, 2010 and April 26, 2010, Zani made weekly payments to the Debtor, each in the amount of $1,463.33.  The Debtor also received payments from Zani of $6,000 on June 21, 2010, and $1,000 on June 26, 2010.  The Debtor represents that these payments were repayment of a loan the Debtor had made to Zani, and were not wages.[15]

---

[9] *Id.* at § 2.

[10] Raso Affidavit, Docket No. 18, Exhibits 1-3 at § 1.15.

[11] Undisputed Facts, Docket No. 16 at ¶ 18; Raso Affidavit, Docket No. 18 at ¶ 11.

[12] Undisputed Facts, Docket No. 16 at ¶ 12.

[13] Raso Affidavit, Docket No. 18 at ¶ 15.

[14] Undisputed Facts, Docket No. 16 at ¶ 21.

[15] *Id.* at ¶ 24; "Concise Statement of Disputed Facts in Opposition to Motion for Summary Judgment," Docket No. 28 at ¶ 1.  This is the only fact upon which the parties disagree – the Plaintiff suggests that these payments were

3

The Funds were able to collect a portion of the delinquent Deductions and Contributions directly from general contractors for which Zani had performed work, and the amounts collected were credited to Zani's account.[16]    Even after these amounts were collected, Zani owed the Funds $183,518.92 for Deductions and Contributions that had accrued through April 2010.[17] Zani's payroll records indicate that additional Deductions in the amount of $3,180.88 and Contributions in the amount of $34,573.94 became due between May 2010 and August 2010.[18] In August 2010, Zani, lacking sufficient funds, ceased operations.[19]

On September 23, 2011, the Plaintiff filed a complaint against the Debtor and Zani in the United States District Court for the District of Massachusetts, seeking damages for the unpaid Deductions and Contributions.[20]    The district court granted summary judgment in favor of the Plaintiff and entered a judgment (the "Judgment") in the amount of $276,341.19, reflecting unpaid Deductions and Contributions through April 2010 in the amount of $183,518.92 ($15,917.50 of which represented unpaid Deductions), interest in the amount of $79,795.86, liquidated damages in the amount of $4,845.00, and attorney's fees and costs in the amount of $8,181.41.[21]

---

wages, while the Debtor denies that he received any wages, and asserts that the payments were repayments of a loan made to Zani.  Characterization of the payments is irrelevant to the disposition of this case, therefore I decline to address the issue.

[16] Undisputed Facts, Docket No. 16 at ¶ 13.

[17] Raso Affidavit, Docket No. 18 at ¶ 17 and Exhibit 5.

[18] Undisputed Facts, Docket No. 16 at ¶ 30.

[19] *Id.* at ¶ 25.

[20] *Raso v. Fahey*, No. 10-11629 (D. Mass. August 9, 2011).

[21] Raso Affidavit, Docket No. 18 at Exhibit 6; Undisputed Facts, Docket No. 16 at ¶ 27.

The Debtor filed his voluntary Chapter 7 petition on January 21, 2011.[22]  He listed the Plaintiff's claim on Schedule F – Creditors Holding Unsecured Nonpriority Claims, assigning it an approximate value of $200,000.  On April 12, 2011, the Plaintiff filed a complaint seeking to establish the nondischargeability of all unpaid Deductions and Contributions pursuant to 11 U.S.C. § 523(a)(4).  In response, the Debtor filed an answer on May 9, 2011. The Plaintiff subsequently filed the Motion for Summary Judgment on January 23, 2012.  The Debtor filed the Opposition on March 2, 2012, in which he conceded that all unpaid Deductions, in the amount of $19,098.38, are nondischargeable.[23]  Accordingly, the only issue for me to decide is whether the unpaid Contributions are nondischargeable.  I held a hearing on March 9, 2012, at which time I took the matter under advisement.

## III. POSITIONS OF THE PARTIES

### The Plaintiff

The Plaintiff argues that the elements of an 11 U.S.C. § 523(a)(4) nondischargeability action are met and that I should rule that the Judgment and other unpaid Contributions and Deductions are nondischargeable.  First, the Plaintiff argues that the Funds constitute technical trusts arising under the Employee Retirement Income Security Act ("ERISA"),[24] because the Funds' assets were entrusted to a trustee, ERISA imposes fiduciary duties with regard to the assets in the Funds, and the trusts were in place at the time the Debtor failed to pay the

---

[22] Chapter 7 Voluntary Petition, Docket No. 1, Case No. 11-10505-WCH.

[23] Memorandum of Law in Opposition to the Motion for Summary Judgment ("Opposition Memorandum"), Docket No. 29 at p. 3.

[24] 29 U.S.C. § 1002, *et seq.*

Contributions.  The Plaintiff cites various examples of prior courts having found that ERISA

employee benefit plans constitute technical trusts for purposes of 11 U.S.C. § 523(a)(4).[25]

Second, the Plaintiff argues that the Debtor fits within the definition of an ERISA

fiduciary, as defined in 29 U.S.C. § 1002(21)(A), because he voluntarily assumed fiduciary

duties by signing the CBA, and as president, treasurer and sole shareholder of Zani, he had "full

discretionary control over which payments were made to which creditors."[26]  The Plaintiff

contends that this control over payment of Zani's creditors constitutes control over assets of the

Funds, because the Trust Agreements define plan assets to include "contributions that are

properly due and owing but not yet paid to the Fund[s] . . . ."[27]  The Plaintiff states that,

accordingly, "when [Zani] is delinquent in its contributions, the [Funds have] a sufficient priority

on the corporation's available resources that individuals controlling corporate resources are

controlling fund assets."[28]

Finally, the Plaintiff argues that the Debtor's failure to pay Contributions was a

defalcation within the meaning of 11 U.S.C. § 523(a)(4), because as a fiduciary of the Funds, the

Debtor owed a duty of loyalty that required him to act in the Funds' best interest and not engage

in "self-dealing and self-preservation."[29]  The Debtor violated the duty of loyalty by

"prioritiz[ing] the payment of corporate expenses in order to benefit himself rather than pay the

employee benefit contributions due and owning," and the Plaintiff argues that a defalcation may

---

[25] *E.g., Weaver v. Weston (In re Weston)*, 307 B.R. 340 (Bankr. D.N.H. 2004); *Eavenson v. Ramey (In re Eavenson)*, 243 B.R. 160 (N.D. Ga. 1999).

[26] Memorandum in Support of Motion for Summary Judgment, Docket No. 17 at p. 10.

[27] *Id.*

[28] *Id.* at 9 (*citing NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F.Supp.2d 194, 201 (S.D.N.Y. 1999)).

[29] *Id.* at 11.

be presumed from this breach.[30]   The Plaintiff contends that I need only find "some degree of fault, closer to fraud" and not "strict specific intent" in order to conclude that the Debtor committed a defalcation.[31]   The Plaintiff further states that the Debtor's failure to pay Contributions constitutes violations of various statutes, both civil and criminal,[32] and offers these violations as proof that a defalcation occurred.

<u>The Debtor</u>

The Debtor's main argument is that failure to pay Contributions does not constitute a defalcation within the meaning of 11 U.S.C. § 523(a)(4).   The Debtor states that a defalcation is "a failure to produce funds <u>entrusted</u> . . . to a fiduciary and applies to conduct that does not necessarily reach a level of fraud, embezzlement or misappropriation."[33]   The Debtor claims that no funds were ever entrusted to him by the Funds, and accordingly, no defalcation occurred.[34] Rather, failure to pay the Contributions is a mere "breach of contract for which [the Debtor] cannot be found to have been guilty of fraud or defalcation."[35]   The Debtor also cites extensively to the court's discussion in *In re Baylis* of the level of fault required for defalcation, presumably implying, but without expressly stating, that the Debtor did not exhibit the requisite level of fault.[36]

---

[30] *Id.*

[31] *Id.* at 10 (*citing Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9, 18-19 (1st Cir. 2002)).

[32] *See* Mass. Gen. Laws ch. 109A, § 6(b) and Mass. Gen. Laws ch. 151D, § 11.

[33] Opposition Memorandum, Docket No. 29 at p. 6 (emphasis in original) (*citing Collier on Bankruptcy*, § 523.07 (3rd ed. 2011).

[34] *Id.*

[35] *Id.*

[36] *Id.* at p. 7-9.

In addition, the Debtor attacks cases cited by the Plaintiff as inapposite. The Debtor argues that *In re Todisco*,[37] cited by the Plaintiff for the elements of an 11 U.S.C. § 523(a)(4) nondischargeability action, is inapplicable because *Todisco* does "not involve alleged personal responsibility for non-payment of union contributions due from a corporation under collective bargaining agreements."[38] The Debtor also states that *Trustees of Connecticut Pipe Trades Local 777 Health Fund v. Nettleton Mechanical Contractors, Inc.*,[39] cited by the Plaintiff for its definition of plan assets, is irrelevant because it is not a bankruptcy case and deals with breach of fiduciary duty, rather than defalcation under 11 U.S.C. § 523(a)(4).[40]

## IV. DISCUSSION

### A. The Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] "A 'genuine' issue is one supported by such evidence that a 'reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[42] Material facts are those having the potential to affect the outcome of the suit under the applicable law.[43] Fed. R. Civ. P. 56 further provides that:

---

[37] *Kinsella v. Todisco (In re Todisco)*, No. 07-1418, 2011 WL 2848710 (Bankr. D. Mass. July 15, 2011).

[38] Opposition Memorandum, Docket No. 29 at p. 4.

[39] *Trs. of Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors, Inc.*, 478 F.Supp.2d 279 (D. Conn. 2007).

[40] Opposition, Docket No. 29 at p. 4.

[41] Fed. R. Civ. P. 56(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[42] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d. 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[43] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[44]

A genuine issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[45]   The Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[46]

   B.  Nondischargeability Pursuant to 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts for "defalcation while acting in a fiduciary capacity. . . ."[47]   This exception requires a creditor to show, by a preponderance of the evidence,[48] that: (1) an express or technical trust existed "prior to the act creating the debt and without reference to the act,"[49] (2) the debtor acted in a fiduciary capacity with respect to the trust, and (3) the debt arises from a defalcation, as the term is used in 11 U.S.C. § 523(a)(4).[50]

---

[44] Fed. R. Civ. P. 56(c)(1).

[45] *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990) (*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[46] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[47] 11 U.S.C. § 523(a)(4).

[48] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

[49] *M-R Sullivan Mfg. Co. v. Sullivan (In re Sullivan)*, 217 B.R. 670, 675 (Bankr. D.Mass. 1998).

[50] *Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005).

1.  The Funds' Status as Express or Technical Trusts

"The definition of 'fiduciary' under [11 U.S.C.] § 523(a)(4) has been narrowly construed to apply only to relationships involving express or technical trusts, and not trusts that are imposed by law as a remedy."[51]   Accordingly, a creditor must show that an express or technical trust existed in order to prevail in a nondischargeability proceeding.   Further, the express or technical trust cannot have arisen from the act constituting the defalcation.[52]   One type of technical trust is a statutory trust, and numerous courts have recognized that ERISA may form the basis for a statutory trust.[53]   To establish the existence of a statutory trust, the Plaintiff must show (1) that money was entrusted to a trustee, (2) that ERISA creates or identifies fiduciary duties, and (3) that "the trust was in place when the defalcation giving rise to the debt occurred."[54]

ERISA § 403(a) requires that "all assets of an employee benefit plan shall be held in trust by one or more trustees,"[55] and the parties have stipulated that the Funds qualify as employee benefit plans under ERISA.[56]  The Funds entrusted plan assets, in the form of Contributions and Deductions, to trustees of the Funds, and therefore the first element of a statutory trust has been

---

[51] *In re Sullivan*, 217 B.R. at 675 (*citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)).

[52] *Id.*

[53] *See, e.g., In re Duncan*, 331 B.R. at 77-78; *In re Eavenson*, 243 B.R. at 166; *In re Weston*, 307 B.R. at 343.

[54] *In re Dunucan*, 330 B.R. at 77; *See also Emp'rs Workers Comp. Ass'n v. Kelley (In re Kelley)*, 215 B.R. 468, 473 (B.A.P. 10th Cir. 1997).

[55] 29 U.S.C. § 1103(a) .

[56] Undisputed Facts, Docket No. 16 at ¶ 5.

met.  Further, ERISA delineates who qualifies as a fiduciary and assigns those fiduciaries various

duties.[57]  For example, ERISA requires fiduciaries to:

> provide for continuation coverage, provide a detailed plan description to all
> employee-beneficiaries, notify each employee-beneficiary of any material
> changes, and act with the care, skill, prudence, and diligence of a prudent man
> acting in a like capacity. . . [T]hese duties attach to the fiduciary at the creation of
> an ERISA plan.  Thus, the requirement that a 'technical trust' arise prior to and
> without regard to the breach . . . is satisfied.[58]

Here, the ERISA plan, in the form of the Funds, predated the Debtor's failure to pay

Contributions.  Accordingly, the trust was in place when the alleged defalcation occurred.  The

second and third elements of a statutory trust are therefore satisfied, and the Funds constitute

technical trusts.

### 2.   The Debtor's Status as a Fiduciary of the Funds

The second element of an 11 U.S.C. § 523(a)(4) nondischargeability action requires the

Debtor to be a fiduciary of the Funds.  The Bankruptcy Code, however, does not define

fiduciary.  Further, while"[t]he meaning of a fiduciary is a matter of federal law, [ ] the broad,

general definition of fiduciary, involving confidence, trust, and good faith, is not applicable in

dischargeability proceedings under § 523(a)(4)."[59]  As a number of courts have found that an

ERISA fiduciary may qualify as an 11 U.S.C. § 523(a)(4) fiduciary and, as  no other basis for the

Debtor's fiduciary status is alleged, I shall begin my inquiry with ERISA's definition of

fiduciary.[60]

---

[57] 29 U.S.C. § 1002(21)(A).

[58] *In re Eavenson*, 243 B.R. at 166 (*citing* 29 U.S.C. §§ 1022, 1024(b)(1), 1104(a)(1)(B) and 1161(a)).

[59] *In re Duncan*, 331 B.R. at 80 (*citing Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998)) (internal quotation marks omitted).

[60] See, *e.g. In re Duncan*, 331 B.R. 70 ("where the debt arises from an ERISA fiduciary acting in his or her fiduciary capacity under the statute, then Section 523(a)(4)'s requirement . . . will be met.); *Blyler v. Hemmeter (In re*

ERISA defines a fiduciary in in relevant part as:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . .[61]

This definition requires the Plaintiff to show both that (1) assets of the Funds are at issue, and (2) that the Debtor exercised discretionary authority or discretionary control over management or disposition of those assets.[62]   The question of when contributions to an employee benefit plan become assets of the plan is determined by the underlying wage agreement between the parties.[63]  "The proper rule, developed by caselaw, is that unpaid employer contributions are not assets of a fund *unless* the agreement between the fund and the employer specifically and clearly declares otherwise."[64]   Here, the CBA, as the underlying wage agreement between the Funds and Zani, bound the Debtor to the terms of the Trust Agreements.[65]   The Trust Agreements state in Section 1.15 that "all contributions shall be considered and defined as plan assets including contributions

---

*Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir. 2001) (A statutory fiduciary will be a fiduciary under 11 U.S.C. § 523(a)(4) if the statute defines the trust property, identifies fiduciary duties, and imposes the fiduciary duties before the fraud or defalcation occurs.); *In re Weston*, 307 B.R. at 343 ("the . . . conclusion that the [d]efendant was an ERISA fiduciary, under the obligation to discharge his fiduciary duties, satisfies the requirement that the [d]efendant was 'acting in a fiduciary capacity' under § 523(a)(4).").

[61] 29 U.S.C. § 1002(21)(A).  Section 1002(21)(A) provides for additional means of achieving fiduciary status.  A person is also a fiduciary under ERISA to the extent he or she:  "(ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  However, it is undisputed that the Debtor neither rendered investment advice under clause (ii), nor exercised discretionary responsibility in the administration of the Funds under clause (iii).

[62] *NYSA-ILA Med. & Clinical Servs.  Fund v. Catucci*, 60 F.Supp.2d at 200;  *see also United States v. Glick*, 142 F.3d 520, 527-28 (2d Cir. 1998).

[63] *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013-14 (11th Cir. 2003); *see also Navarre v. Luna (In re Luna)*, 406 F.3d 1192, 1199-1201 (10th Cir. 2005).

[64] *Id.* (emphasis added).

[65] Raso Affidavit, Docket No. 18, Exhibit 4 at Article VI, § 1(a), (b), (c).

that are properly due and owing but not yet paid to the Funds by Contributing Employers."[66]

Section 1.15 "specifically and clearly declares" that unpaid Contributions are assets of the

Funds.[67]   Accordingly, the delinquent Contributions were assets of the Funds, despite the fact

that they remained within Zani's possession, and the first prong of ERISA's definition of

fiduciary is satisfied.

The second prong of ERISA's definition of fiduciary requires a showing that the Debtor

exercised "discretionary authority or discretionary control respecting management . . . or

disposition of [the plan's] assets."[68]   There is no question that the Debtor had physical control

over Zani's assets, and by extension, the unpaid Contributions.   However, that control was not

discretionary in nature.   The Debtor had a contractual obligation pursuant to the CBA to pay

Contributions to the Funds, and it is the Plaintiff, not the Debtor, who has discretionary control

over the "contractual right to collect unpaid contributions.   Whether to enforce [its] contractual

rights is entirely up to the [Plaintiff]; the [Debtor], meanwhile, [has] no say over whether this

right will be enforced or not."[69]   Although the Debtor certainly had the option to breach its

contract, and in fact did, "an employer cannot become an ERISA fiduciary merely because it

breaches its contractual obligations to a fund."[70]   As the Court stated in *Luna*,

> The act of failing to make contributions to the Funds cannot reasonably be
> construed as taking part in the "management" or "disposition" of a plan asset.
> The asset in question, it must be remembered, is the [Plaintiffs'] contractual right

---

[66] *Id.* at  Exhibits 1-3 at § 1.15.

[67] *ITPE Pension Fund v. Hall*, 334 F.3d at 1013.

[68] 29 U.S.C. § 1002(21)(A).

[69] *In re Luna*, 406 F.3d at 1202.

[70] *Id.* at 1203.

to collect the unpaid contributions, and the [Debtor] exercised no control over how the [Plaintiffs] manage or dispose of that asset.[71]

The Plaintiff relies on *NYSA-ILA Medical & Clinical Services v. Catucci*[72] and *Trustees of Connecticut Pipe Trades Local 777 Health Fund v. Nettleton Mechanical Contractors, Inc.*[73] for the proposition that because the Debtor "oversaw the day-to-day operations and was the sole decision maker for [Zani]," "was involved in overseeing the bookkeeping and decided which bills should be paid and how much to pay," and "was responsible for overseeing that . . . payments for contributions were made to the Funds," he exercised discretionary authority or control over the Funds' assets.[74]   To the extent *NYSA-ILA Medical & Clinical Services* and *Trustees of Connecticut Pipe* supports the Plaintiff's position, I find them to be incorrectly decided.[75]   The option to breach a contract does not constitute discretion in the performance of ones duty.   Under the Plaintiff's logic, although the Debtor had a contractual obligation to pay the Contributions, "its discretion to exercise prudence in upholding this duty – i.e., to pay or not to pay – is enough to make it an ERISA fiduciary.   In other words, an employer automatically becomes a fiduciary of an ERISA plan as soon as it breaches its agreement to make employer contributions."[76]   The United States Court of Appeals for the Tenth Circuit disagreed with this

---

[71] *Id.* at 1204.

[72] *NYSA-ILA Med. & Clinical Servs.   Fund v. Catucci*, 60 F.Supp.2d at 200-202.

[73] *Trs. of Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors, Inc.*, 478 F.Supp.2d at 282-83.

[74] Undisputed Facts, Docket No. 16 at ¶¶ 16, 17, 18.

[75] The Plaintiff also relies on *In re Duncan*, 331 B.R. 70, as do I in reaching my opinion.   *Duncan* is distinct from both *NYSA-ILA Med. & Clinical Servs.* and *Trustees of Connecticut Pipe*, as well as the present case, because in *Duncan*, the debtor admitted that he had discretionary authority and responsibility in administration of the plan, which is separate grounds for a finding of ERISA fiduciary status under 29 U.S.C. § 1002(21)(A)(ii).

[76] *In re Luna*, 406 F.3d at 1203.

logic in *Luna*, and so do I.[77]   It would be illogical and contrary to ERISA's purpose if an

employer's breach of contract singlehandedly brought the employer within ERISA's definition

of fiduciary.  The Debtor is not an ERISA fiduciary, and as no other basis exists for a finding a

fiduciary status under 11 U.S.C. § 523(a)(4), the elements of the Plaintiff's nondischargeability

action have not been met.[78]   Accordingly, the Motion for Summary Judgment must be denied in

part.

## V.  <u>APPLICATION OF RULE 56(f)</u>

Federal Rule of Civil Procedure 56(f) provides:

> After giving notice and a reasonable time to respond, the court may:
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties
> material facts that may not be genuinely in dispute.[79]

There is no factual dispute here.  The sole theory asserted in this adversary proceeding

has always been whether the Debtor committed a defalcation while acting in a fiduciary

capacity.[80]   While the parties focused on whether the debtor had, in fact, committed a defalcation

within the meaning of 11 U.S.C. § 523(a)(4), they incorrectly assumed that he was a fiduciary.  I

have held that he was not.  As a result, Plaintiff cannot prevail on the merits of this adversary

---

[77] *Id.* ("We disagree with this logic.  In our view, an employer cannot become an ERISA fiduciary merely because it breaches its contractual obligations to a fund. ERISA's text and purpose, the law of trusts, Department of Labor regulatory pronouncements, and case law all lend support to our conclusion.").

[78] As the Plaintiff has not asserted any other theory under 11 U.S.C. § 523(a)(4), I need not consider whether the Contributions were embezzled or converted.

[79] Fed. R. Civ. P. 56(f), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

[80] *See also Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004).  In determining fiduciary status under 11 U.S.C. § 523(a)(4), the United States Court of Appeals for the Eighth Circuit focused on  ERISA fiduciary status, finding that the debtor, an individual controlling a corporate entity, had a "basically contractual, not fiduciary" relationship to the plan. *Id.* at 877.  Though  *Hunter v. Philpott*'s holding is not as artfully reasoned as that of *In re Luna*, it is essentially the same – that control of corporate assets does not render the debtor a fiduciary for purposes of either ERISA or 11 U.S.C. § 523(a)(4).

proceeding and it is appropriate to, and I shall, enter summary judgment partially in favor of the Debtor with respect to the Contributions.

## VI. **CONCLUSION**

In light of the foregoing, I will enter an order granting in part the Plaintiff's Motion for Summary Judgment with respect to the Union Dues and, with respect to the Contributions, denying in part the Plaintiff's Motion for Summary Judgment and entering summary judgment in part in favor of the Debtor.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: May 14, 2012

Counsel Appearing:

    Catherine M. Campbell and Melissa A. Brennan, Feinberg, Campbell & Zack, P.C.,
        Boston, MA, for Charles Raso, the Plaintiff
    Gary W. Cruickshank, Law Office of Gary W. Cruickshank, Boston, MA,
        for James M. Fahey, the Debtor